ROBERTS, Appellant, vs. ROBERTS, Respondent.

*March 12—April 7, 1931.*

402

404

For the appellant there was a brief by *Godfrey, Amlie & Arnold* of Elkhorn, and oral argument by *A. L. Godfrey.*

For the respondent there was a brief by *Burdick & Burdick* of Lake Geneva and *Jeffris, Mouat, Oestreich, Wood & Cunningham* of Janesville, and oral argument by *Otto A. Oestreich* and *H. A. Burdick.*

FAIRCHILD, J. The evidence in this case does not warrant a finding that up to the time the plaintiff left defendant her offenses exceeded in quality or number those of which he was guilty. She had annoyed him by her anxious watching over her foster son and had in effect accused him of infidelity and of wanting to get rid of plaintiff. She put an unwarranted emphasis on the unusual taste of the water from the teakettle. On the other hand he accused her of being lazy and of infidelity and immoral conduct with her foster son. There was no more basis for the accusations of the one than for those of the other. The attitude of witnesses at the time of the trial, their interest in the outcome of the action, and their general bearing upon the witness stand are to be taken into consideration in considering the credibility of the witnesses, but the judgment of the court cannot be based upon impressions. In the absence of testimony susceptible of the interpretation, consistent with opinions formed from things observed on the trial, there is no case.

The trial court found in its eleventh finding, "the history of this marriage and the whole situation creates the impression that it was a rather carefully-thought-out scheme on the part of the plaintiff to acquire what she could obtain of

the estate of the defendant and then to separate from him." It is apparent and borne out by the record that an antenuptial agreement was made and that she left in May following the October in which they were married. But the evidence indicates an intention on her part to accept the marriage relation in a proper spirit and with a disposition to work for their common advantage. He was the one who, for a trifling reason, sought to keep the fact of their marriage a secret at least for a time. The evidence shows that he discussed the matter with an idea that what he wanted was a housekeeper. He told her that he wished that instead of marrying he had hired a housekeeper, and offered her some money if she would go. The presence of Lanagan, who was the foster son of the plaintiff, seems to have been the source of some of the difficulty. It is established by the evidence that after the death of his father and mother he came into her home with his brother and sister, he being then about seventeen years of age, the brother younger, and the sister still younger. The plaintiff cared for these children until the boys entered the army at the time of the World War and the girl married. After the war Tom returned to make his home with the plaintiff and was living there at the time of the marriage of plaintiff and defendant.

The trial court saw the parties and formed the opinion that the plaintiff was of a nature that was not susceptible to hurt by the conduct of the defendant and that she was more interested in the money she was to or might acquire than in the comfort and companionship of a home. The record, giving due consideration to those things which are made to appear upon the trial and which may properly assist the trial court in forming an opinion as to the credibility of witnesses, warrants denying her divorce on her complaint, but it also discloses a course of conduct on his part that makes it impossible to say that he is so free from fault that her conduct entitles him to have his prayer for divorce granted.

The doctrine of recrimination in relation to divorce ac-

tions has been held to be a sufficient bar to a divorce where it is shown that each party has been guilty of an offense which the statute has made a ground for divorce in favor of the other. 2 Bishop, Marriage, Divorce, and Separation, §§ 372–376; *Hiecke v. Hiecke,* 163 Wis. 171, 175, 157 N. W. 747. The plaintiff's conduct up to the time of her leaving was not essentially different in nature or effect from his. As discouragement with conditions and dissatisfaction with each other began to grow stronger, each saw new faults in the other and read into every act a purpose and meaning that did not exist in fact. There was no effort made by the defendant to assist the wife in removing causes or overcoming difficulties which seemed to have ruined the marital relations. It is true that he caused the arrest of Lanagan for trespass and later served notice on Lanagan and on Mrs. Roberts, who were engaged in the conduct of a grocery, to vacate the premises, but he admits there never was any serious effort made by him to assist her in getting out of the grocery business into which she had entered, if not at his request, at least with his consent and co-operation. The evidence is in dispute as to who first suggested having Lanagan come to assist in the operation of the grocery store, and under the findings of the court we must accept, so far as material to the outcome, the finding that it was upon her suggestion and at her wish. But the enterprise appears to have been organized for the general and common interest of the defendant as well as of the plaintiff and Lanagan.

When differences reach the point where the husband and the wife are antagonistic and no common effort to accomplish a mutual understanding is made and there exists no suggestion of a generous effort by either to relieve the other, where each is at fault, and there is evidence that one is as guilty as the other, neither is entitled to a divorce. The policy of this state as fixed by the legislature in that event is that neither shall have a divorce.

There is no evidence of a fraudulent attempt on the part

of the plaintiff to induce the defendant to enter into the antenuptial agreement. The evidence shows the proposition of marriage originated with him. The antenuptial agreement was drawn in his lawyer's office when her lawyer was present. It was later modified by her consent, the modification being drawn by his lawyer when her lawyer was not present. When the trouble over the management of the store arose, the defendant, being liable for certain debts, induced the plaintiff to consent to the withdrawal of some of the securities set aside for her under the antenuptial agreement and to use the proceeds in payment of debts due amounting to upwards of $2,400. These amounts are included in the sum of $3,900 referred to in the findings as having been received by the plaintiff.

Antenuptial agreements between parties of the age of these parties circumstanced as they were, are not unusual and are not to be regarded with suspicion. The fact that this venture seems to have ended disastrously does not indicate that either party was acting in bad faith when it was entered into, and in view of the fact that the treatment of the husband by the wife about equals the treatment extended by him to her, the judgment as entered must be reversed.

*By the Court.*—Judgment reversed, with directions to dismiss plaintiff's complaint and defendant's counterclaim; appellant to recover costs.